IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PREMIER RESEARCH          )
INTERNATIONAL, LLC,       )
                          )
          Plaintiff,      )
                          )
     v.                   )          1:19CV1147
                          )
MEDPACE, INC.,            )
                          )
          Defendant.      )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

This matter is before the court on Defendant Medpace,
Inc.'s ("Medpace") motion to dismiss Plaintiff Premier Research
International, LLC's ("PRI") Amended Complaint for several
service mark and unfair competition violations under federal and
North Carolina law. (Doc. 14.) Medpace moves to dismiss PRI's
Complaint under Federal Rules of Civil Procedure 12(b)(2) and
12(b)(3). (Id.) For the reasons stated herein, the court finds
PRI's Complaint for should be dismissed lack of personal
jurisdiction.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Parties

PRI is a limited liability company organized under the laws
of Delaware, with its principal place of business in Durham,

North Carolina. (First Amended Complaint ("Am. Compl.") (Doc. 11) ¶ 2.)[1] PRI is a clinical research and development service provider in the biotech and pharmaceutical industries. (Id. ¶ 3.)

Medpace is a corporation organized under the laws of Ohio, with its principal place of business there as well. (Id. ¶ 4.) Medpace has a related entity, Medpace Research, Inc. ("Medpace Research"), which is registered to conduct business in North Carolina. (Id. ¶ 5.) Medpace also offers clinical research and development services to biotech companies. (Id. ¶ 6.) Plaintiff alleges Medpace "offers and provides clinical research and development services to biotech entities, including those in North Carolina, in the development of treatments for diseases across medical practice areas," and "offers, participates in, organizes, and conducts clinical research trial services in North Carolina and actively solicits and transacts related business within North Carolina in conjunction with the offering of its clinical research services to North Carolina-based entities." (Id. ¶¶ 6-7.) Plaintiff also alleges Medpace employs

---

[1] Plaintiff did not allege where its members reside, but the defect is irrelevant since this suit is brought under the court's federal question jurisdiction and the court's supplemental jurisdiction. (Am. Compl. (Doc. 11) ¶ 9.)

several employees in North Carolina for the purposes of conducting and providing clinical trials to North Carolina-based companies. (Id. ¶ 8.)

**B.  Factual Background**

This case arises out of Medpace's use of the mark "BUILT FOR BIOTECH" (the "Mark").

Plaintiff alleges that it has used the Mark "continuously" since "as early as November 2017," with its first use priority date of November 30, 2017. (Id. ¶¶ 12, 14-15.) Plaintiff filed an application for a federal registration of the Mark on September 13, 2019, for various business uses. (Id. ¶ 13.) Plaintiff uses the Mark in commerce, such as at trade shows, on social media, in press releases, and during customer presentations. (Id. ¶ 16.)

Medpace, a competitor of Plaintiff's, allegedly was on notice of Plaintiff's use of the Mark because Medpace attended several of the same industry trade shows as Plaintiff in 2018 and mid-2019. (Id. ¶¶ 22-26.) Those trade shows were in Massachusetts, Illinois, and Pennsylvania. (Id. ¶¶ 19, 22-26.) Plaintiff alleges Medpace filed an application for registration of the Mark on June 26, 2019, "just a few weeks after attending the 2019 ASCO Annual Meeting in Chicago," at which Plaintiff promoted the Mark in connection with its services. (Id. ¶ 27.)

- 3 -

In its application, Medpace allegedly claimed ownership of the Mark, and started using the Mark in its online website and advertising starting June 21, 2019. (Id. ¶¶ 28-29.)

### C.   **Procedural Background**

Plaintiff PRI filed a First Amended Complaint. (Doc. 11.) Defendant Medpace filed a motion to dismiss for lack of personal jurisdiction and improper venue, (Doc. 14), and a supporting memorandum, (Mem. in Supp. of Mot. to Dismiss First Am. Complaint ("Def.'s Br.") (Doc. 15)). Plaintiff responded, (Pl.'s Opp'n to Def.' Mot. to Dismiss ("Pl.'s Resp.") (Doc. 19)), and Defendant replied, (Doc. 22).

Plaintiff brings the following claims: service mark infringement in violation of 15 U.S.C. § 1125(a) (Claim One) (Am. Compl. (Doc. 1) ¶¶ 35-44); unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a) (Claim Two (id. ¶¶ 45-56)); service mark infringement under North Carolina law (Claim Three) (id. ¶¶ 57-66); unfair Competition under North Carolina common law relating to Medpace's use of the Mark (Claim Four) (id. ¶¶ 67-79); and a violation of the North Carolina Unfair and Deceptive Trade Practices Act under N.C. Gen. Stat. § 75-1.1 et seq. relating to Medpace's use of the Mark (Claim Five) (id. ¶¶ 80-87).

- 4 -

## II. **ANALYSIS**

Because personal jurisdiction is dispositive, the court addresses it first.

### A. **Personal Jurisdiction**

#### 1. **Personal Jurisdiction Legal Background**

On a personal jurisdiction challenge, the plaintiff bears the burden of ultimately proving personal jurisdiction by a preponderance of the evidence. Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003). But "[o]nce a defendant presents evidence indicating that the requisite minimum contacts do not exist, the plaintiff must come forward with affidavits or other evidence in support of its position." Pathfinder Software, LLC v. Core Cashless, LLC, 127 F. Supp. 3d 531, 538 (M.D.N.C. 2015) (quoting Vision Motor Cars, Inc. v. Valor Motor Co., 981 F. Supp. 2d 464, 468 (M.D.N.C. 2013)). When the court does not hold an evidentiary hearing, the court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005) (internal quotation

marks omitted) (quoting Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)).

To determine whether personal jurisdiction is proper, the court engages in a two-part inquiry: first, North Carolina's long-arm statute must provide a statutory basis for the assertion of personal jurisdiction, and second, the exercise of personal jurisdiction must comply with due process. Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001); Vogel v. Wolters Kluwer Health, Inc., 630 F. Supp. 2d 585, 594-95 (M.D.N.C. 2008). Courts have historically construed North Carolina's long-arm statute to be coextensive with the Due Process Clause, thereby collapsing the two requirements "into a single inquiry": whether the non-resident defendant has such "minimum contacts" with the forum state that exercising jurisdiction over it does not offend "traditional notions of fair play and substantial justice." Christian Sci., 259 F.3d at 215 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

Due process allows a court to exercise general or specific jurisdiction over a defendant. General jurisdiction exists over a foreign defendant when its "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from

- 6 -

dealings entirely distinct from those activities." Int'l Shoe
Co., 326 U.S. at 318; see also Helicopteros Nacionales de
Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.9 (1984) ("When a
State exercises personal jurisdiction over a defendant in a suit
not arising out of or related to the defendant's contacts with
the forum, the State has been said to be exercising 'general
jurisdiction' over the defendant."). General jurisdiction
requires a foreign defendant's "affiliations with the State [to
be] so 'continuous and systematic' as to render [it] essentially
at home in the forum State." Goodyear Dunlop Tires Operations,
S.A. v. Brown, 564 U.S. 915, 919 (2011) (citing Int'l Shoe Co.,
326 U.S. at 317). "The Supreme Court has recently held that,
aside from the 'exceptional case,' general personal jurisdiction
over a corporation is usually only appropriate in the
corporation's state of incorporation or principal place of
business." Pub. Impact, LLC v. Bos. Consulting Grp., Inc., 117
F. Supp. 3d 732, 738 (M.D.N.C. 2015) (citing Daimler AG v.
Bauman, 571 U.S. 117, 138-39 n.19 (2014)).

    "Specific jurisdiction is very different." Bristol-Myers
Squibb Co. v. Super. Ct. of Cal., 582 U.S. ____, ____, 137 S.
Ct. 1773, 1780 (2017). It exists when the forum state exercises
personal jurisdiction over the defendant "in a suit arising out
of or related to the defendant's contacts with the forum[.]"

Helicopteros Nacionales de Colombia, 466 U.S. at 414 n.8.

"[T]here must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" Bristol-Myers Squibb Co., 137 S. Ct. at 1780 (quoting Goodyear, 564 U.S. at 919). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." Id. (citing Goodyear, 564 U.S. at 931 n.6.)

To exercise specific jurisdiction over a defendant, due process requires that the court examine "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." UMG Recordings, Inc. v. Kurbanov, 963 F.3d 344, 351-52 (4th Cir. 2020) (quoting Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009)).

## 2. General Jurisdiction

In order to exercise general jurisdiction, Medpace must be incorporated in North Carolina, have its principal place of business in North Carolina, or qualify as an exceptional case

- 8 -

wherein its contacts with North Carolina are so "'continuous and systematic' as to render [it] essentially at home in the forum State." Goodyear, 564 U.S. at 919.

Plaintiff alleges Medpace is incorporated in Ohio with its principal place of business there as well. (Am. Compl. (Doc. 11) ¶ 4.) Therefore, Medpace is not amenable to general jurisdiction in North Carolina under Daimler.

Further, while Medpace has a related entity registered to do business in North Carolina, this is irrelevant to the inquiry as to Medpace. Under North Carolina law, a parent-subsidiary relationship is, by itself, insufficient to assert general personal jurisdiction over the parent. See Szulczewski v. Cox Enters., Inc., No. 3:19CV479-GCM, 2020 WL 1674558, at *3 (W.D.N.C. Apr. 6, 2020). The court may assert general personal jurisdiction over a parent, however, when the parent exercises "substantial control" over the subsidiary's activities. Id. In doing so, courts applying North Carolina law have looked to the parent's "[c]ontrol, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to [that] transaction had at the time no separate mind, will, or existence of its

- 9 -

own." <u>Krausz Indus. Ltd. v. Smith-Blair, Inc.</u>, 188 F. Supp. 3d 545, 556–57 (E.D.N.C. 2016) (internal citations omitted).

Here, however, Plaintiff only asserts that "[a] related Medpace entity, Medpace Research, Inc., is registered to conduct business in the State of North Carolina, with its registered agent and registered mailing address located at 160 Mine Lake Ct., Ste. 200, Raleigh, North Carolina 27615." (Am. Compl. (Doc. 11) ¶ 5.) Plaintiff has submitted no facts tending to show that Medpace exercises "substantial control" such that the court asserting general jurisdiction over Medpace would be appropriate.

Finally, even if Medpace exercises "substantial control" over Medpace Research, Plaintiff has not shown that Medpace Research would be subject to general personal jurisdiction in North Carolina in the first place. Maintaining business registration in a state is insufficient for the application of general jurisdiction under "[l]ong-standing precedent." <u>Debbie's Staffing Servs., Inc. v. Highpoint Risk Servs., LLC</u>, No. 1:17CV657, 2018 WL 1918603, at *3 (M.D.N.C. Apr. 20, 2018) (citing <u>Ratliff v. Cooper Labs., Inc.</u>, 444 F.2d 745, 748 (4th Cir. 1971); <u>Pub. Impact</u>, 117 F. Supp. 3d at 738).

Because Plaintiff fails to submit any other facts that would tend to show that Medpace Research is either incorporated

- 10 -

in North Carolina or maintains its principal place of business there, there is no evidence that this court could even use Medpace Research as a subsidiary through which to assert general personal jurisdiction over Defendant Medpace.

In addition, Plaintiff fails to allege facts or submit evidence sufficient to show Medpace's contacts with North Carolina are so "continuous and systematic as to render [it] essentially at home in the forum State." Goodyear, 564 U.S. at 919 (internal quotation marks omitted). While it appears Medpace employs some people in North Carolina, the Supreme Court has made clear that "in-state business . . . does not suffice to permit the assertion of general jurisdiction over claims . . . that are unrelated to any activity occurring in [the forum state]." BNSF Ry. Co. v. Tyrrell, ____ U.S. ____, ____, 137 S. Ct. 1549, 1559 (2017). The court finds that this is not such an "exceptional case." Pub. Impact, 117 F. Supp. 3d at 738.

The court finds that Plaintiff fails to make a prima facie showing that Defendant is subject to general personal jurisdiction in this court.

### 3. Specific Jurisdiction

To exercise specific jurisdiction over Medpace, due process requires that the court examine "(1) the extent to which the defendant purposefully availed itself of the privilege of

- 11 -

conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." UMG Recordings, 963 F.3d at 351-52 (quoting Consulting Eng'rs Corp., 561 F.3d at 278). "The plaintiff must prevail on each prong." Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 189 (4th Cir. 2016) (citing Consulting Eng'rs Corp., 561 F.3d at 278).

Medpace argues that Plaintiff's claims do not arise from Medpace's activities in North Carolina, nor has Medpace "purposefully availed" itself of North Carolina. (Def.'s Br. (Doc. 15) at 5.) Therefore, Medpace argues, the specific jurisdiction test is not satisfied. (Id. at 5-6.)

Plaintiff argues that the "intentional use of a North Carolina-based competitor's identical mark, combined with Medpace's offices, employees, registered agent and clinical trials in the state, is . . . enough to establish minimum contacts giving rise to the activities complained of in this case." (Pl.'s Resp. (Doc. 19) at 8-9.)

At this time, Medpace has not filed affidavits challenging the facts alleged in Plaintiff's Amended Complaint, nor does Medpace challenge the facts set out in the declaration of Kristin M. Adams, (Declaration of Kristin M. Adams ("Adams

- 12 -

Decl.") (Doc. 19-1).) The court therefore finds, for the purposes of Medpace's motion, the following facts. Medpace offers and provides clinical research and development services to biotech entities in North Carolina. (Am. Compl. (Doc. 11) ¶ 6.) Medpace "offers, participates in, organizes, and conducts clinical research trial services in North Carolina and actively solicits and transacts related business within North Carolina in conjunction with the offering of its clinical research services to North Carolina-based entities." (Id. ¶ 7.) Medpace employs several employees located in North Carolina for the purpose of conducting and providing clinical trials in North Carolina to North Carolina-based companies. (Id. ¶ 8.) As Kristin Adams provides in her declaration, a search on LinkedIn reveals Medpace employs the following people in North Carolina: Thomas Thompson, Vice President for Medical Affairs, and Sarah DeRossett, Senior Medical Director. (Adams Decl. (Doc. 19-1) ¶ 2.) Adams further asserts that Medpace "has been involved in research studies in which testing was performed by LipoScience Inc., based in Raleigh, North Carolina," as demonstrated by a scholarly publication found on ProQuest Dialog. (Id. ¶ 3.) Adams contends Medpace's website is accessible nationwide, and it allows users to sign up as research study participants and to log in to various Medpace systems. (Id. ¶ 4.) Finally, she

- 13 -

asserts that her colleagues in North Carolina are able to access these pages on Medpace's website. (Id.)

Plaintiff also filed screenshots from LinkedIn, which reveal that Jennifer Pullum, Executive Director for Clinical Trial Management at Medpace, Momméja-Marin Hervé, Vice President of the Medical Department at Medpace, and Phillippa Miranda, Vice President of Medical Affairs at Medpace are all listed as being in the "Raleigh-Durham, North Carolina Area." (Doc. 19-2 at 5, 9, 11.)

The court will address each prong of the personal jurisdiction test in turn.

### a. <u>Purposeful Availment</u>

The Fourth Circuit, noting that "this prong is not susceptible to a mechanical application," has set forth a list of "nonexclusive factors" to consider:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

- 14 -

UMG Recordings, 963 F.3d at 352 (internal quotations and citation omitted). "Relevant to this analysis are the quality and nature of the defendant's connections, not merely the number of contacts between the defendant and the forum state." Id.

Plaintiff alleges "Medpace regularly transacts business" in North Carolina, and "regularly engages in research studies conducted in North Carolina in collaboration with North Carolina-based research institutions and offers and provides its services to entities in North Carolina." (Am. Compl. (Doc. 11) ¶ 10.) Medpace also allegedly "employs multiple managers" in North Carolina, and "[h]iring notices on online job-search platforms indicate that Medpace has sought and continues to seek employees to work for Medpace in North Carolina as Clinical Study Managers." (Id. ¶¶ 8, 10.) The court finds these allegations, making all inferences in favor of jurisdiction, are sufficient to support a finding that Medpace "should reasonably anticipate being haled into court," see World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980), and thus the purposeful availment prong is met.

Because Plaintiff's allegations concerning Medpace's business dealings in North Carolina are sufficient to find purposeful availment, the court need not address Medpace's

- 15 -

website as part of its analysis; the court will address
Medpace's website in the following section.

## b.  Arising out of Activities Directed at the State

Turning to the "arising out of" prong, Medpace argues
Plaintiff's causes of action do not "arise from" Medpace's
activities in North Carolina nor does Plaintiff ever allege
Medpace used the Mark in connection with Medpace's activities in
North Carolina. (Def.'s Br. (Doc. 15) at 6.) PRI argues that
Medpace's activity in North Carolina vis-à-vis its website, in
addition to other contacts with North Carolina, make it subject
to personal jurisdiction in North Carolina.

"The analysis here is generally not complicated. Where
activity in the forum state is the genesis of [the] dispute,
this prong is easily satisfied." UMG Recordings, 963 F.3d at 354
(alteration in original) (internal quotation marks omitted)
(quoting Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber
Co., 682 F.3d 292, 303 (4th Cir. 2012)).

Plaintiff alleges the following facts to support its
assertion that this litigation "arose" out of Medpace's
activities directed towards the state: (1) Medpace used the Mark
in connection with clinical research services offered to and
performed for North Carolina-based entities; (2) Medpace used

- 16 -

the Mark "in its advertising and promotional materials, on its website, in online search results, and on its company social media platforms in connection with the promotion of its clinical research services to entities interested in engaging in clinical research trials, including such entities in North Carolina"; and (3) Medpace's acts of infringement have caused harm to Plaintiff in North Carolina. (Am. Compl. (Doc. 11) ¶¶ 32, 42.)

Plaintiff further alleges that "as a competitor of [Plaintiff] and having been to at least two trade shows at which [Plaintiff] prominently displayed its marks, Medpace knew that by placing [the Mark] on its website it was intentionally reaching into North Carolina, [Plaintiff]'s place of business, to cause confusion amongst consumers." (Pl.'s Resp. (Doc. 19) at 8; see also Am. Compl. (Doc. 11) ¶¶ 24-27.)

The court finds these allegations are insufficient to establish Medpace's use of the Mark "arises out of" its contacts with North Carolina. The court will address each basis for jurisdiction in turn.

i.    **Medpace's Use of the Mark in Connection with Clinical Research Services**

Plaintiff alleges Medpace's use of the Mark "in connection with clinical research services offered to and performed for North Carolina-based entities constitutes infringement of

- 17 -

[Plaintiff's] exclusive rights in and to the BUILT FOR BIOTECH mark in violation of 15 U.S.C. § 1125(a)." (Am. Compl. (Doc. 11) ¶ 42.) But Plaintiff provides no further evidence of specifically how Medpace used the Mark in offering or performing clinical research services to North Carolina entities, besides through Medpace's website, which the court addresses _infra_. Though the court must "draw the most favorable inferences for the existence of jurisdiction," New Wellington, 416 F.3d at 294, the court finds this allegation is insufficient to determine that Medpace used this Mark in any way besides on its website, which, as the court finds _infra_, may not serve as a basis for personal jurisdiction.

Because Plaintiff fails to provide any objective facts to support a general allegation that Medpace uses the Mark in connection with clinical trial services to and performed for North Carolina entities, other than the website, this may not serve as a basis for asserting specific personal jurisdiction.[2]

---

[2] Plaintiff does allege one customer of Medpace in North Carolina. (See Adams Decl. (Doc. 19-1) ¶ 4.) Taking that allegation as true, as required, Plaintiff fails to identify the time during which that entity became a customer or whether the Mark had any relationship to that business arrangement.

Case 1:19-cv-01147-WO-JEP   Document 26   Filed 09/30/20   Page 18 of 32

## ii.    __Medpace's Website__

Plaintiff offers evidence that Medpace operates a website that is accessible in North Carolina. (See Adams Decl. (Doc. 19-1) ¶ 4.)

In determining whether a defendant's website may serve as the basis for specific personal jurisdiction, courts look at several factors. "The interactivity of a website is a jurisdictionally relevant fact." Fidrych v. Marriott Int'l, Inc., 952 F.3d 124, 141 (4th Cir. 2020). Further,

> the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

- 19 -

Id. (quoting Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp.
1119, 1124 (W.D. Pa. 1997)). The Fourth Circuit "re-formulated"
this analysis into the following:

> a State may, consistent with due process, exercise
> judicial power over a person outside of the State when
> that person (1) directs electronic activity into the
> State, (2) with the manifested intent of engaging in
> business or other interactions within the State, and
> (3) that activity creates, in a person within the
> State, a potential cause of action cognizable in the
> State's courts.

Id. at 142 (quoting ALS Scan, Inc. v. Digit. Serv. Consultants,
Inc., 293 F.3d 707, 714 (4th Cir. 2002)).[3]

As Adams asserts in her declaration, Medpace has a website
accessible nationwide, including to those in North Carolina.
(Adams Decl. (Doc. 19-1) ¶ 4.) She also asserts that users may
sign up as research study participants and log in to various
Medpace systems on the website. (Id.) Plaintiff, however, offers
no further evidence of interactivity, of whether the website has
any information specifically directed at North Carolina citizens
or entities, or of use of the Mark to establish contacts with
North Carolina firms or citizens.

---

[3] The court notes Plaintiff applied this test as part of its
argument in favor of general jurisdiction instead of specific
jurisdiction. (See Pl.'s Resp. (Doc. 19) at 5-6.) Plaintiff's
application is incorrect. The Fourth Circuit applies this test
to aid its specific personal jurisdiction analysis. See Fidrych,
952 F.3d at 142.

The court will now examine the interactivity level of
Medpace's website and what effect that has on the analysis, as
well as whether Medpace (1) directed electronic activity into
the North Carolina, (2) with the manifested intent of engaging
in business or other interactions within North Carolina, and (3)
that activity created, in a person within North Carolina, a
potential cause of action cognizable in North Carolina's courts.
See Fidrych, 952 F.3d at 142.

From Plaintiff's evidence, the court finds Medpace's
website is at least "semi-interactive," and could be classified
as "interactive," given users may "sign up" as research study
participants. (Adams's Decl. (Doc. 19-1) ¶ 4.) The court,
however, keeps in mind the Fourth Circuit's reminder that "if
[the court] attach[es] too much significance on the mere fact of
interactivity, [the court] risk[s] losing sight of the key issue
in a specific jurisdiction case — whether 'the defendant has
purposefully directed [its] activities at residents of the
forum.'" Fidrych, 952 F.3d at 142 (quoting Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 472 (1985)). The court does not find
that this electronic activity, with respect to its website, was
done "with the manifested intent of engaging in business or
other interactions within the State." Plaintiff has put forth no
evidence tending to show that Medpace had a "manifested intent"

- 21 -

of engaging in business within North Carolina through its website. "[T]here is no evidence of exchanges, of any nature, between North Carolina residents and [Medpace] through the site." Pub. Impact, 117 F. Supp. 3d at 744. And "[t]here is no allegation that [Medpace] has used [Plaintiff]'s trademark in North Carolina (other than via the Internet), nor does it appear that [Medpace] has specifically used the trademark to establish any contact with a North Carolina resident or the State of North Carolina itself." Id. at 745. Indeed, it appears that Medpace's website was "accessible to all but targeted at no one in particular." Fidrych, 952 F.3d at 143.

Further, Plaintiff has put forth no evidence that Medpace's website displayed any advertising directed towards North Carolina customers, see UMG Recordings, 963 F.3d at 353 (finding the defendant sold advertising space to advertisers directing their ads towards "specific jurisdictions like Virginia," therefore, the defendant had purposefully availed himself of Virginia), nor that anyone from North Carolina has used Medpace's website outside of Plaintiff's lawyers for the purposes of this suit. See Vape Guys, Inc. v. Vape Guys Distrib., Inc., Civil Action No. 3:19cv298, 2020 WL 1016443, at *8-9 (E.D. Va. Mar. 2, 2020) (finding the plaintiff's allegations that "at least one Virginia sale exists and that

- 22 -

Defendant operates an interactive website accessible to
Virginians," in addition to the defendant soliciting business
from Virginia customers, were enough to support minimum contacts
for personal jurisdiction purposes). Instead, this court finds,
based on Plaintiff's allegations, that the website "allows users
to sign up as research study participants . . . and to log in to
various Medpace systems." (Adams's Decl. (Doc. 19-1) ¶ 4.) The
website's interactive content is directed towards only
recruiting study participants, not customers. This finding is
supported by Plaintiff's allegations regarding the presence of
employees in North Carolina who support clinical research
activities. (See id. ¶ 2; Doc. 19-2.) Plaintiff raises no
allegations that the Mark caused confusion among research study
participants or otherwise caused Plaintiff damage as a result of
the recruitment of study participants. Plaintiff alleges
wrongful use of the Mark in recruiting customers in North
Carolina and offers no evidence that the recruitment of research
study participants in North Carolina supports an inference that
customers are also solicited and served in North Carolina in
connection with the alleged use of the Mark.

Accordingly, the court finds Medpace's online activity has
not created Plaintiff's trademark infringement causes of action

- 23 -

within North Carolina in a manner sufficient to support specific jurisdiction.

### iii. Medpace Caused Plaintiff Harm in North Carolina

Finally, the court finds Plaintiff's allegation that "Medpace knew that by placing the [] [M]ark on its website it was intentionally reaching into North Carolina, [Plaintiff]'s place of business, to cause confusion amongst consumers," (Pl.'s Resp. (Doc. 19) at 8; see also Am. Compl. (Doc. 11) ¶¶ 24-27), is insufficient to establish personal jurisdiction.

Under the "effects" test, as first stated by the Supreme Court in Calder v. Jones, 465 U.S. 783 (1984), plaintiffs must prove:

> (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

Carefirst, 334 F.3d at 398 n.7. Though trademark infringement is considered an intentional tort, Plaintiff's argument "would fail the third element of the test." Firebirds Int'l, LLC v. Firebird Rest. Grp., LLC, No. 3:16-cv-00774-RJC-DSC, 2017 WL 4366750, at *7 (W.D.N.C. Oct. 2, 2017). The court has already determined that the evidence is not sufficient to support a finding that

- 24 -

Medpace "expressly target[ed] North Carolina," id., with its
Mark for the purpose of recruiting customers. "[A]lthough the
place that the plaintiff feels the alleged injury is plainly
relevant to the [jurisdictional] inquiry, it must ultimately be
accompanied by the defendant's own [sufficient minimum] contacts
with the state if jurisdiction . . . is to be upheld."
Carefirst, 334 F.3d at 401 (quoting Young v. New Haven Advocate,
315 F.3d 256, 262 (4th Cir. 2002)). This argument therefore
fails because the court finds Plaintiff has not demonstrated
that its causes of action "arise" out of Medpace's contacts with
North Carolina as necessary under the second prong of the
specific personal jurisdiction test.

c.    **Constitutional Reasonableness**

"Once it has been decided that a defendant purposefully
established minimum contacts within the forum State, these
contacts may be considered in light of other factors to
determine whether the assertion of personal jurisdiction would
comport with 'fair play and substantial justice.'" Burger King,
471 U.S. at 476 (quoting Int'l Shoe Co., 326 U.S. at 320). Even
though this court readily concludes that Plaintiff's causes of
action do not arise from Defendant's contacts with North
Carolina such that Medpace should be subjected to personal

- 25 -

jurisdiction in this state, it will briefly address this prong of the analysis.

The constitutional reasonableness part "of the analysis ensures that litigation is not so gravely difficult and inconvenient as to place the defendant at a severe disadvantage in comparison to his opponent." Tire Eng'g, 682 F.3d at 303 (internal quotation marks omitted). In making this determination, the court has considered:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

Consulting Eng'rs, 561 F.3d at 279.

The constitutional reasonableness prong "ensures that litigation is not so gravely difficult and inconvenient as to place the defendant at a severe disadvantage in comparison to his opponent." Tire Eng'g, 682 F.3d at 303 (quoting CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 296 (4th Cir. 2009) (internal quotation marks omitted). "The burden on the defendant, interests of the forum state, and the plaintiff's interest in obtaining relief guide our inquiry. A corporate defendant's domicile abroad, standing alone, does not

render domestic exercise of jurisdiction unduly burdensome." Id. (internal citations omitted).

First, Medpace is domiciled in Ohio. It would thus "bear at least some burden" if it were forced to defend the litigation in North Carolina. New Venture Holdings, L.L.C. v. DeVito Verdi, Inc., 376 F. Supp. 3d 683, 697 (E.D. Va. 2019). Its principals would likely have to travel from Ohio to North Carolina. See id.; Carepoint, Inc. v. Carepoint Healthcare, LLC, No. 2:20-cv-1109-DCN, 2020 WL 4207579, at *5 (D.S.C. July 22, 2020). This factor weighs against the exercise of jurisdiction.

Second, North Carolina has little interest in adjudicating this dispute; Plaintiff is incorporated in Delaware, not North Carolina, despite its principal place of business being there. Cf. Carepoint, 2020 WL 4207579, at *5 ("South Carolina has a strong interest in adjudicating a trademark dispute in which a South Carolina corporation alleges infringement based on in-state sales by an out-of-state entity."). This factor weighs against finding jurisdiction.

Third, the court finds Plaintiff does have an interest in "obtaining convenient and effective relief," Wright v. Zacky & Sons Poultry, LLC, 105 F. Supp. 3d 531, 541 (M.D.N.C. 2015), but that Plaintiff is a "sophisticated corporation, and can afford to bring a lawsuit in another state," New Venture Holdings, 376

- 27 -

F. Supp. 3d at 697. This factor weighs against finding jurisdiction.

Fourth, the court is confident both Ohio and North Carolina share an interest in adjudicating this dispute efficiently and fairly. This factor does not weigh for or against finding jurisdiction.

Finally, regarding social policies, the court finds no substantive policy of North Carolina or Ohio would be furthered by litigating this case in North Carolina. This factor does not weigh for or against finding jurisdiction.

The court also finds it would be constitutionally unreasonable to find personal jurisdiction here, given the court has already found that Plaintiff's causes of action do not arise out of Medpace's contacts with North Carolina. Indeed, it would undermine the long-held principle that jurisdiction should be exercised when the defendant had "clear notice that it is subject to suit" in the forum state. New Venture Holdings, 376 F. Supp. 3d at 696.

Taking these factors in total, the court finds it would be constitutionally unreasonable to exercise personal jurisdiction over Medpace.

- 28 -

### 4.  **Personal Jurisdiction Conclusion**

The court finds that it has no basis to assert general or specific personal jurisdiction over Defendant Medpace.

### B.  **Venue**

Because this court finds it lacks personal jurisdiction over Defendant Medpace, the court need not address venue. See Pathfinder Software, 127 F. Supp. 3d at 544 (declining to address the defendant's argument for dismissal based on improper venue after finding the plaintiff failed to make a prima facie showing of personal jurisdiction).

### C.  **Plaintiff's Request for Jurisdictional Discovery**

Finally, the court finds Plaintiff's argument that the court should allow jurisdictional discovery without merit.

The court may grant limited discovery on the issue of personal jurisdiction. See Carefirst, 334 F.3d at 402 (recognizing district courts have broad discretion whether to grant discovery and concluding court did not abuse discretion in denying discovery on issue of personal jurisdiction); Mylan Lab'ys, Inc. v. Akzo, 2 F.3d 56, 64 (4th Cir. 1993) (same); McLaughlin v. McPhail, 707 F.2d 800, 806 (4th Cir. 1983) (affirming district court conclusion that "limited depositions may be warranted to explore jurisdictional facts in some cases"); see also Oppenheimer Fund, Inc. v. Sanders, 437 U.S.

- 29 -

340, 351 n.13 (1978) ("[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues.").

"When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." Carefirst, 334 F.3d at 402. If a "plaintiff can show that discovery is necessary in order to meet defendant's challenge to personal jurisdiction, a court should ordinarily permit discovery on that issue unless plaintiff's claim appears to be clearly frivolous." Rich v. KIS Cal., Inc., 121 F.R.D. 254, 259 (M.D.N.C. 1988). But when the plaintiff's "claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition." Id.

As these cases make clear, the issue before the court is whether jurisdictional discovery is "necessary to meet defendant's challenge to personal jurisdiction" or whether Plaintiff's claim is "both attenuated and based on bare allegations in the face of specific denials made by defendants." Id.

- 30 -

Plaintiff contends its jurisdictional discovery request would cover the following information:

> (a) total revenue generated from contacts with North Carolina related to its clinical research services; (b) relevant total annual revenue to determine the proportion of revenue comprised by contacts with North Carolina entities; (c) the number and positions of employees Medpace has in North Carolina; (d) the number of offices Medpace or its subsidiaries have in North Carolina; (e) the nature, quantity and quality of the North Carolina entities Medpace has partnered with, or considered partnering with, to provide its services; and (f) the scope of marketing and advertising efforts directly or indirectly targeting North Carolina entities.

(Pl.'s Resp. (Doc. 19) at 12.)

Plaintiff's "claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, [therefore] the Court need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition." <u>Rich</u>, 121 F.R.D. at 259. The claim of jurisdiction is attenuated because there are no allegations to suggest the underlying controversy has arisen in this state. Even if information was revealed as to (a) through (e), the court already determined Plaintiff personally availed itself of North Carolina. With respect to Plaintiff's request for discovery as marketing and advertising efforts, this request is

- 31 -

based on "bare allegations," and do not suggest any further discovery would reveal facts relevant to specific jurisdiction.

The court is thus satisfied that discovery is not necessary and the request for discovery should be denied.

## III. <u>CONCLUSION</u>

For the reasons set forth above, the court finds that Defendant's motion will be granted.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss, (Doc. 14), is **GRANTED** and this case is **DISMISSED WITHOUT PREJUDICE.**

A judgment reflecting this memorandum opinion and order will be entered contemporaneously herewith.

This the 30th day of September, 2020.

_____
United States District Judge